**FILED**

Jul 08 2019, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robin R. Shinkle,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 8, 2019

Court of Appeals Case No.
19A-CR-410

Appeal from the Dearborn
Superior Court

The Honorable Jonathan N.
Cleary, Judge

Trial Court Cause No.
15D01-1712-F2-15

**Najam, Judge.**

## Statement of the Case

[1]     Robin R. Shinkle appeals his sentence after he pleaded guilty to dealing in methamphetamine, as a Level 2 felony. Shinkle raises a single issue for our review, namely, whether his seventeen-and-a-half-year sentence—the final three

years of which were suspended to probation, and the final two years of incarceration prior to probation ordered to be served on home detention—is inappropriate in light of the nature of the offense and his character.

[2] We affirm.

## Facts and Procedural History

[3] Around October of 2017, Lawrenceburg police officers learned that Shinkle was involved in dealing in methamphetamine. Between late October and December 1, those officers engaged in six controlled buys of methamphetamine from Shinkle. On December 6, officers initiated a traffic stop of Shinkle's vehicle and, during that stop, conducted a canine search of the exterior of his vehicle. The canine unit indicated the presence of narcotics in Shinkle's vehicle, which officers then searched, seizing "well above 20 grams" of methamphetamine. Tr. at 28. Shinkle later admitted the methamphetamine was his.

[4] The State charged Shinkle with dealing in methamphetamine, as a Level 2 felony; possession of methamphetamine, as a Level 4 felony; possession of a syringe, as a Level 6 felony; and with being a habitual offender. Thereafter, Shinkle agreed to plead guilty to the Level 2 felony allegation, and, in exchange, the State agreed to dismiss the other charges. The trial court accepted Shinkle's guilty plea and, following a hearing, sentenced him as follows:

As far as the character of the offender, . . . the Court is required to consider the presentence investigation, which is an aggravating factor in this case.

The long history began in 1997, OWI. He received pretrial diversion in Ripley County. Battery, a diversion in 1998, Ripley County. 2000, check deception, diversion, Dearborn County. 2000, operating without a license, it looks like that was an infraction in Ripley County. And then it looks like there's actually operating a vehicle after suspension, prior, an A misdemeanor . . . .

2000, driving while suspended, in Jennings County, conviction. 2000, check deception, diversion, in Ripley County. 2001, driving while suspended, conviction in Jennings County. 2002, felony theft conviction, Jennings County. Probation violation for failure to report moving without providing notice, and positive for methamphetamine, second probation violation for a new criminal offense. Third probation violation, for failure to report. 2002, Ripley County, check deception, conviction. Probation violation for new offenses. 2001, driving while suspended, conviction, probation violation for new offenses.

2002, driving while suspended, conviction. Probation violation for methamphetamine, and other violations. 2003, operating while suspended, conviction in Ripley County. 2003, felony theft, conviction in Ripley County. 2005, battery, diversion in Ripley County. 2005, non-support of a dependent child, a Class C felony in Dearborn County. Received a sentence of eight years, with all eight years suspended to probation. You had a probation violation in 2006 for a positive drug screen for cocaine. It was filed and then dismissed.

And then there was a new probation violation filed for auto theft. An amended probation violation for a drug screen for an

amphetamine. And you had one year revoked, [which] was served on the Dearborn County Work Release Program. 2008, Dearborn Superior Court 2, auto theft, a conviction as a misdemeanor. 2012, theft conviction as a felony, and possession of controlled substance, conviction as a felony in Dearborn County Superior Court 2.

2017, he was charged in Dearborn Circuit Court with dealing in methamphetamine, as a Level 2 felony . . . and also corrupt business influence . . . . That case was dismissed, pursuant to a plea agreement[] that he'd plead guilty in this Court.

And in this Court, he's pl[eaded] guilty to dealing in methamphetamine, a Level 2 felony. And a possession of meth, syringe[,] and habitual offender were dismissed. . . .

As far as the nature of the criminal offense, it's undisputed that there were six buys. Some with a confidential informant, others were directly to an undercover detective . . . . [T]he testimony is that there's a total of 31.4 grams of methamphetamine that were bought [at those six buys].

* * *

When the traffic stop was conducted, there was another approximate 20 grams of methamphetamine in Mr. Shinkle's vehicle. So the total methamphetamine seized by Dearborn County law enforcement from Mr. Shinkle, in approximately a little over a month investigation, was over 50 grams of methamphetamine.

* * *

. . . Mr. Shinkle's testimony is that he's the middle guy. . . . [H]e doesn't view himself as a drug dealer, he testified, because he's not making money on his transactions.

The Court finds the culpability of the Defendant is high. This was not a one-time event[. T]his was an organized activity where he was getting a large amount of methamphetamine and distributing that in Dearborn County. It happened multiple times. The severity of the crime, and damage to others, . . . is highly destructive. . . .

I've heard remorse from Mr. Shinkle today. So the Court finds that his culpability is high. That the severity of dealing methamphetamine is high, and the damage to others in this community is high. The possible penalties for this offense, as a Level 2 felony[,] are incarceration between 10 years and 30 years. An advisory sentence of 17 ½ years, and a fine up to $10,000. . . .

. . . The State's recommendation is that he receive 28 years of the 30 years of incarceration. The Court finds that the mitigating factors that have been presented to the Court is that he has pl[eaded] open to the Court. . . . The Court also considers that he attempted to cooperate with [local law enforcement officers] and there hasn't been any evidence to the Court that his cooperation led to any arrest . . . further up the chain. But there is evidence that he . . . attempted to cooperate . . . . The Court considers his health concerns, which do appear to be very serious. And the Court considers that he does present as a hard-worker, as a family man, that he does have some remorse. He presents as a very intelligent, articulate man.

And the Court considers all of those things [to] balance . . . his long criminal history. . . .

The knowingly selling drugs [by Shinkle] to one of the drug court participants, as the Judge [who] oversees the drug court, the Court finds that Mr. Shinkle would not be appropriate for the drug court program, with that knowledge. The individuals within drug court would know these things. And to include Mr. Shinkle in the drug court program when he was knowingly dealing drugs to people in treatment, the Court finds that he would not be a good fit for drug court.

He has been assessed by Community Corrections for in-home incarcerations. And with in-home incarcerations comes a case manager and does come significant counseling. And so he has been assessed for the program.

. . . The Court's going to impose the advisory sentence, which is 17 ½ years. . . .

The Court suspends the final three years of this sentence to probation . . . . The final two years prior to the probation . . . will be . . . [on] in-home incarceration. . . .

Id. at 69-75. This appeal ensued.

## Discussion and Decision

[5] Shinkle asserts on appeal that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This Court has often recognized that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the

crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has explained that "[t]he principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived 'correct' result in each case. Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate." *Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (citations omitted; omission in original).

[6] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[7] We first address Shinkle's argument that our Supreme Court's recent *per curiam* opinion in *Hoak v. State*, 113 N.E.3d 1209 (Ind. 2019), requires us to remand for the trial court to determine whether Shinkle is eligible for placement in a

substance abuse treatment program in lieu of placement in the Department of Correction. In *Hoak*, Hoak pleaded guilty to possession of methamphetamine and was sentenced to a term of imprisonment to be followed by a term of probation. While on probation a little more than three years later, the State charged her with two new counts of possession of methamphetamine and a new count of possession of paraphernalia. She pleaded guilty to a Level 5 felony possession charge and to violating the terms of her probation, and the trial court sentenced her to an additional term of imprisonment.

[8] On appeal, our Supreme Court noted that Hoak had had "multiple drug-related contacts with the criminal justice system over many years" but she "has yet to receive court-ordered substance abuse treatment." *Id.* at 1209 (quotation marks omitted). The court then remanded, without further explanation, for the trial court "to determine whether Hoak is eligible for substance abuse treatment in a Community Corrections placement; and[,] if she is eligible, to order half of her sentence to be executed in Community Corrections." *Id.* at 1209-10.

[9] We are not persuaded by Shinkle's attempt to analogize his circumstances to those in *Hoak* for at least two reasons. First, Shinkle pleaded guilty to dealing, not possession. As the trial court here stated during sentencing, Shinkle's Level 2 felony dealing offense demonstrates that his "culpability . . . is high." Tr. at 72.

[10] Second, the distinctions between Shinkle's conviction for dealing and Hoak's convictions for possession aside, the trial court here already considered,

consistent with our Supreme Court's holding in *Hoak*, whether Shinkle was eligible for substance abuse treatment programs. The trial court expressly found that, because Shinkle had knowingly dealt methamphetamine to a participant in the local drug court, it would be inappropriate to place Shinkle in that program. Nonetheless, the court did find that Shinkle could benefit from a term with community corrections, and the court accordingly ordered the last two years of his executed sentence to be served on home detention. As such, the trial court did not err under *Hoak* when it sentenced Shinkle.

[11] His argument under *Hoak* notwithstanding, Shinkle also asserts that his sentence is inappropriate in light of the nature of the offense because his offense "did not involve any violence or threat of violence"; his offense "did not involve firearms or endangerment of others"; he "did not cause any harm to law enforcement and was cooperative with law enforcement throughout their investigation"; he "admitted to his criminal conduct and entered into an open plea" and his "sole objective [in the offense] was to feed his own addiction for which he had never received treatment." Appellant's Br. at 10-11. And he argues that his sentence is inappropriate in light of his character because he has "a history of liver cancer and ha[s] been diagnosed with hepatitis C"; he had had "a double knee replacement, from which he still suffered . . . complications" and his wife had been "diagnosed with cancer and needed Shinkle's support and assistance." *Id.* at 11.

[12] We cannot say that the trial court's restrained imposition of the advisory sentence of seventeen and a half years—the advisory sentence being "the

starting point the Legislature has selected as an appropriate sentence"—here with the last three years suspended to probation and the last two years of incarceration to be served on home detention, is inappropriate in light of the nature of the offense and Shinkle's character. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016). The nature of the offense demonstrates that Shinkle was dealing in amounts of methamphetamine well above the statutory requirement, and, as the trial court noted, "[t]his was not a one-time event." Tr. at 72. Further, Shinkle knowingly dealt methamphetamine to at least one participant in the local drug court program. And Shinkle's extensive criminal history, as detailed by the trial court and which extends beyond drug offenses, reflects poorly on his character. Thus, we cannot say that Shinkle's sentence is inappropriate under Indiana Appellate Rule 7(B), and we affirm Shinkle's sentence.

[13] Affirmed.

Baker, J., and Robb, J., concur.