## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 22 2019, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy E. Grimes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 22, 2019

Court of Appeals Case No.
19A-CR-653

Appeal from the Hendricks
Superior Court

The Honorable Rhett Stuard,
Judge

Trial Court Cause No.
32D02-1702-F2-1

**May, Judge.**

[1] Jeremy E. Grimes appeals his placement in the Indiana Department of Correction ("DOC") for his ten-year sentence for Level 2 felony dealing in cocaine.[1] We affirm.

# Facts and Procedural History

[2] In a related interlocutory appeal, we explained the underlying facts thus:

> At approximately 4:50 a.m. on February 2, 2017, Indiana State Police Officer Shawn Rawlins and a rookie officer in training were driving eastbound on I-70 between State Road 267 and Ronald Reagan Parkway. Officer Rawlins observed a vehicle traveling westbound on County Road 600 South, a public road that runs parallel to the highway. The vehicle appeared to be driving toward a cell phone tower. When Officer Rawlins saw the vehicle, he thought that "that vehicle should not be there at that time of the morning." Tr. Vol. II p. 8. He testified that "at that time of the morning . . . especially on that access road, there shouldn't be any passenger vehicles going down there." *Id.* at 29.
>
> Officer Rawlins exited the highway and proceeded to County Road 600 South to locate the vehicle. Officer Rawlins testified that he is "very familiar with the area." *Id.* at 12. This area is dark and isolated; Officer Rawlins could "just slightly see the back side of" a distribution warehouse. *Id.* at 10. He testified that there is constant illegal dumping in that area; that he has found other vehicles parked in and around that area in which people were engaging in sexual interactions or illicit drug use; that several times he has observed the lock on the cell phone tower cut and that copper wire has been ripped out of a different

---

[1] Ind. Code 35-48-4-1(a)(2) (2016).

nearby cell phone tower; and that there have been confirmed marijuana grows in the area.

As the officer was driving on County Road 600 South, he checked the roads that intersect with it. As he came up to Bountiful Place, which is a public road with one residence on it, he could see a small dim light that he thought was possibly a vehicle's dome light. He directed his spotlight down Bountiful Place and saw a dark-colored sedan sitting partially on the roadway. The vehicle appeared to be the same one the officer had observed from the highway. Officer Rawlins believed that this vehicle "most likely did not belong to the one resident on Bountiful Place." *Id*. at 28. When the officer turned on his spotlight, the vehicle turned on its own lights and began moving forward. Officer Rawlins activated his emergency lights and the "vehicle stopped pretty much immediately." *Id*. at 14. He testified that the vehicle moved "five to ten feet. . . . [I]t basically rolled forward and stopped." *Id*. at 24. At the time, Officer Rawlins had not observed any traffic infractions.

Officer Rawlins approached the driver's side of the vehicle, while the rookie officer approached the passenger side. Grimes was sitting in the driver's seat, and a woman was in the passenger's seat. When Grimes rolled down his window, Officer Rawlins immediately smelled a strong odor of burnt marijuana. Officer Rawlins requested Grimes's driver's license and vehicle registration and asked what he was doing in the area. Both Grimes and the passenger appeared to be nervous and shaking, but their body movements appeared to be somewhat lethargic. Grimes had difficulty getting his driver's license out of his wallet. Initially, he had difficulty explaining why they were in the area, but then he stated that they were out driving and talking and had gotten lost, and that they had pulled over to figure out how to get home. Officer Rawlins began explaining how they could return to the street they wanted to reach.

Meanwhile, the rookie officer signaled to Officer Rawlins that drugs were in plain view in the vehicle. The two officers asked Grimes and the passenger to exit the vehicle, and the officers placed them in handcuffs. The officers found marijuana, cocaine,[2] a scale, and a weapon inside the vehicle.

On February 3, 2017, the State charged Grimes with one count of Level 2 felony dealing in cocaine, nine counts of Level 2 felony dealing in a controlled substance, one count of Level 4 felony dealing in a controlled substance, one count of Level 4 felony possession of cocaine, eight counts of Level 6 felony possession of a controlled substance, one count of Level 6 felony dealing in marijuana, one count of Class B misdemeanor possession of marijuana, and one count of Class C misdemeanor possession of paraphernalia.

*Grimes v. State*, 32A04-1709-CR-2001, *slip op.* at 1-2 (Ind. Ct. App. 2018) *trans. Denied*, (footnote added).

[3]     Pursuant to a plea agreement, Grimes pled guilty to one count of Level 2 felony dealing in cocaine and the State agreed to dismiss all other charges against him. The plea agreement provided that the trial court must impose at least the minimum sentence of ten years, with the executed portion of the sentence capped at six years. The trial court sentenced Grimes to ten years, with four years suspended to probation.

---

[2] Police also found eleven different kinds of pills.

# Discussion and Decision

[4]     Grimes argues his sentence is inappropriate in light of his character and the nature of his offense. Our standard of review is well settled.

> We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

*Couch v. State*, 977 N.E.2d 1013, 1017 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*. The appellant bears the burden of demonstrating his sentence is inappropriate. *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*.

[5]     Grimes does not challenge the length of his sentence. Instead he challenges the trial court's decision to order a portion of his sentence executed in the DOC.

"The place that a sentence is to be served is an appropriate focus for application of our review and revise authority." *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). However, it is "quite difficult for a defendant to prevail on a claim that the placement of his or her sentence is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). As we explained in *Fonner*:

> As a practical matter, trial courts know the feasibility of alternative placements in particular counties or communities. For example, a trial court is aware of the availability, costs, and entrance requirements of community corrections placements in a specific locale. Additionally, the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. A defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate.

*Id*. at 343-4.

[6] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). A Level 2 felony has a sentencing range of ten to thirty years with an advisory sentence of seventeen and one-half years. Ind. Code § 35-50-2-4.5. The trial court sentenced Grimes to the minimum, ten years, with four years suspended to probation.

[7] Regarding the nature of his offense, the trial court found nothing extraordinary about the nature of Grimes' offense. We note that while Grimes pled guilty to only one charge, the search of his vehicle revealed eleven different types of pills

and a firearm, in addition to a large quantity of cocaine. Grimes' main argument focuses on his character, which we now address.

[8] To suggest his sentence is inappropriate for his character, Grimes attempts to analogize his case to *Hoak v. State*, 113 N.E.3d 1209 (Ind. 2019). In that case, Hoak pled guilty to Class B felony possession of methamphetamine and the trial court sentenced her to ten years imprisonment with four years suspended to probation. *Id*. On appeal, our Indiana Supreme Court remanded the case back to the trial court to determine Hoak's eligibility for substance abuse treatment in a community correction program based in part on dicta in our opinion noting "she has yet to receive court-ordered substance abuse treatment" after committing multiple drug offenses in a short amount of time. *Id*. (quoting *Hoak v. State*, 18A-CR-1094, *slip op. at* 1 (Ind. Ct. App. 2018), *trans. granted*).

[9] Subsequent to the *Hoak* decision, this court discussed the issue of sentencing individuals to substance abuse programs as an alternative to placement in the DOC in *Shinkle v. State*, 129 N.E.3d 212 (Ind. Ct. App. 2019), *trans. denied*. The facts of *Shinkle* are almost identical to those before us. Shinkle pled guilty to Level 2 felony dealing in methamphetamine and was sentenced to the advisory sentence for that offense, seventeen and one-half years. *Id*. at 213. The trial court ordered three years of Shinkle's sentence to be served on probation and the final two years of his incarceration to be served on home detention. *Id*.

[10] On appeal, Shinkle argued his case should be remanded for resentencing in order to determine his eligibility for placement in a substance abuse program

because of our Indiana Supreme Court's holding in *Hoak*. We distinguished *Hoak*, noting that Hoak's crime was one of possession, not dealing, which indicated Shinkle's increased "culpability." *Id*. at 217. Further, when remanding *Hoak*, our Indiana Supreme Court specifically quoted the Indiana Court of Appeals' opinion, which stated Hoak had not yet received substance abuse treatment despite years of drug-related offenses. The *Shinkle* court distinguished those facts because Shinkle's trial court considered the possibility of substance abuse treatment but ultimately determined it inappropriate considering the circumstances. *Id*.

[11] The same is true here. Like in *Shinkle*, Grimes pled guilty to a dealing offense, not a possession offense. Unlike in *Hoak*, wherein the trial court did not consider the possibility of substance abuse treatment, the trial court ordered Grimes to participate in substance abuse treatment while on probation and to "take advantage of every program they offer in the DOC." (Tr. Vol. II at 59.) The trial court also stated in Grimes' sentencing order: "Upon successful completion of the clinically appropriate Substance Abuse Treatment Program as determined by IDOC, the Court will consider a modification of this sentence." (App. Vol. II at 141.) *Hoak* does not control.

[12] Additionally, regarding his character, while Grimes' criminal history is not egregious, he was arrested and convicted of an additional drug charge for a crime that occurred while he was out on bail for the current charge. As Grimes received the minimum sentence allowed for his offense, the trial court gave him multiple avenues to modify the terms of his placement upon successful

completion of rehabilitative programs, and his sentence was within the requirements of his plea agreement, we cannot say his placement in the DOC for at least a portion of his minimum sentence is inappropriate. *See Moon v. State*, 110 N.E.3d 1156, 1163 (Ind. Ct. App. 2018) (placement not inappropriate based on nature of offense, character of offender, and opportunity to seek rehabilitative treatment).

# Conclusion

[13] We cannot say Grimes' initial placement in the DOC was inappropriate based on the nature of the offense or his character. Accordingly, we affirm.

[14] Affirmed.

Najam, J., and Bailey, J., concur.