## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2020, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Raymond E. Cook, III,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

January 29, 2020

Court of Appeals Case No.
19A-CR-1594

Appeal from the Ripley Circuit Court

The Honorable Ryan King, Judge

Trial Court Cause No.
69C01-1711-F4-21

**Robb, Judge.**

# Case Summary and Issue

[1]     Raymond Cook III pleaded guilty to dealing in methamphetamine, a Level 5 felony, and maintaining a common nuisance, a Level 6 felony. The trial court sentenced Cook to an aggregate sentence of seven years, with five years to be served in the Indiana Department of Correction ("DOC"), one year served on home detention, and one year suspended to probation. Cook appeals his sentence, raising one issue for our review: whether his seven-year sentence is inappropriate in light of the nature of the offenses and his character. Concluding Cook's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2]     On November 9, 2017, Trooper Jordan Craig of the Indiana State Police received information that Cook's girlfriend, Jessica Steele,[1] was at Cook's house and had an outstanding warrant for her arrest for narcotics. Trooper Craig and other officers went to Cook's house where a man who was standing outside informed them that Cook and Steele were inside the house. After officers announced their presence and spent several minutes requesting that occupants of the house come outside, Cook and Steele walked out of the house and were taken into custody. Cook admitted to Trooper Craig that there were drugs inside the house. Cook consented to a search and walked Trooper Craig

---

[1] Cook and Steele were married in February 2018 and their daughter was born in April 2018. *See* Exhibit Index, Volume 2 at 8-9.

through the house to locate the drugs. Trooper Craig located marijuana; a powdered substance which Cook confirmed to be methamphetamine; two digital scales; and other paraphernalia. *See* Appendix of Appellant, Volume 2 at 22. Trooper Craig also noticed a loaded .45 caliber handgun "in close proximity" to the drugs and paraphernalia, and two shotguns. Transcript of Evidence, Volume 2 at 46. Cook admitted to Trooper Craig that he dealt "a quarter gram of methamphetamine to friends . . . once or twice a week for the past six months[.]" *Id*. The State charged Cook with attempted dealing in methamphetamine, a Level 4 felony; dealing in methamphetamine and possession of methamphetamine, both Level 5 felonies; possession of methamphetamine and maintaining a common nuisance, both Level 6 felonies; and possession of marijuana, a Class B misdemeanor.

[3] On March 27, 2019, Cook appeared in court for a change of plea hearing. Pursuant to a written plea agreement, Cook agreed to plead guilty to one count of Level 5 felony dealing in methamphetamine and one count of Level 6 felony maintaining a common nuisance. In exchange, the State would dismiss the remaining charges. Cook's sentence for each offense would be at the discretion of the court, but the sentences would be served consecutive to each other. At the guilty plea hearing, a factual basis for the plea was laid and the trial court took the matter under advisement.

[4] A sentencing hearing was held on June 11 and the trial court heard testimony from Trooper Craig and Cook. Trooper Craig testified that, while on bond, Cook was allegedly involved in a police chase with a known drug dealer,

Jeremy Wall, where drugs were involved.[2] Cook testified that he became addicted to methamphetamine after a previous relationship ended in divorce and after the death of one of his children in October of 2016. He testified that he met Steele in 2017 and married her in 2018 knowing she used methamphetamine. He also admitted that he smoked methamphetamine on three separate occasions in December of 2017 in violation of the conditions of his bond. The State indicated it was going to ask the trial court to order a drug screen and asked Cook if he would pass; Cook responded, "Yeah." *Id.* at 80. The trial court then asked,

> The Court: Mr. Cook, you gonna pass a drug screen today? If I give you a hair follicle [test], it tells me if you used any drugs in the last six months. Are you gonna pass that?
>
> [Cook]: I should, yes, except for prescriptions, I should.
>
> * * *
>
> The Court: So you haven't used any methamphetamine in the last six months?
>
> [Cook]: No.

---

[2] Cook was not charged with a crime as a result of this incident.

*Id.* at 80-81. The trial court ordered Cook to take a drug screen that day through the probation department and continued the sentencing hearing to June 25, 2019, to await the results.

[5] At the June 25 hearing, Cook's drug screen results were admitted into evidence; he had tested positive for methamphetamine, amphetamine, oxycodone, and cannabinoids. *See id.* at 87; *see also* App. of Appellant, Vol. 2 at 88. Cook conceded he had been using methamphetamine "[h]ere and there to help [him] get things done[.]" Tr., Vol. 2 at 88. After hearing additional testimony and arguments of counsel, the trial court accepted Cook's plea agreement, entered judgment of conviction for dealing in methamphetamine and maintaining a common nuisance, and dismissed the remaining charges. In determining Cook's sentence, the trial court found the following aggravating circumstances:

> [T]he first aggravator is during the commission of the offense that you were in possession of multiple firearms, but most problematically, the loaded .45 caliber handgun. . . . The next aggravating circumstance is that you admitted that you sold a quarter gram of methamphetamine a couple times a week for a period of months. . . . So, this was an ongoing enterprise that you were engaged in, in selling methamphetamine . . . . I mean, you put that with the other .45 caliber handgun, that looks pretty bad. . . . Both of these Aggravating Factors are of great weight, substantial Aggravating Factors. . . . [Y]ou continued to use methamphetamine, clearly, while out on bond, you admitted that you violated the terms and conditions of your bond . . . and you tested positive at the first portion of the sentencing hearing for use of methamphetamine, THC and Oxycodone. . . . [Y]ou had no respect for the bond's order and then you seemingly top that off by perjuring yourself here in the courtroom, and add to that,

the people that you associate yourself with are known
methamphetamine users [and] dealers[.]

*Id.* at 101-02. The trial court acknowledged Cook did not "have an extensive
criminal history" and that he pleaded guilty but did not find those to be
mitigating circumstances. *Id.* at 103. The trial court sentenced Cook to two
years for maintaining a common nuisance and five years for dealing in
methamphetamine to be served consecutively in the DOC. The trial court
ordered one year of his sentence to be served on home detention and one year
suspended to probation.[3] Cook now appeals. Additional facts will be supplied
as necessary.

# Discussion and Decision

## I. Standard of Review

We may review and revise criminal sentences pursuant to the authority derived
from Article 7, section 6 of the Indiana Constitution. Indiana Appellate Rule
7(B) empowers us to revise a sentence "if, after due consideration of the trial
court's decision, [we] find[] that the sentence is inappropriate in light of the
nature of the offense and the character of the offender." Therefore, when
reviewing a sentence, we give deference to the trial court's sentencing decision
because Rule 7(B) requires us to give "due consideration" to the decision and

---

[3] The trial court ordered that Cook receive drug treatment through the Courts Addiction and Drugs Service
Program while he was on home detention. *See* Appealed Order at 2.

we recognize the unique perspective of the trial court in making sentencing decisions. *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense and the defendant's character. *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Our principal role in Rule 7(B) review is to "leaven the outliers[.]" *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[7] The defendant carries the burden to persuade us that the sentence imposed by the trial court is inappropriate, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors appearing in the record in making such a determination, *Reis v. State*, 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). The question under Rule 7(B) is "not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

## II. Inappropriate Sentence

### A. Nature of the Offense

[8] We begin our analysis of the nature of the offense with the advisory sentence, which is the starting point selected by the legislature as an appropriate sentence. *Reis*, 88 N.E.3d at 1104. Cook was convicted of dealing in methamphetamine as a Level 5 felony and maintaining a common nuisance as a Level 6 felony. The advisory sentence for a Level 5 felony is three years, with a minimum sentence of one year and a maximum sentence of six years. Ind. Code § 35-50-

2-6(b). The advisory sentence for a Level 6 felony is one year, with a minimum sentence of six months and a maximum sentence of two and one-half years. Ind. Code § 35-50-2-7(b). Cook was sentenced to five years for his Level 5 felony conviction and two years for the Level 6 felony. Although both sentences exceed the advisory sentence, they fall short of the maximum sentence allowed.

[9] The nature of the offense is found in the details and circumstances surrounding the offense and the defendant's participation therein. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Cook asserts that the nature of his offense is on the "lesser end of the spectrum." Brief of Appellant at 13. We disagree. Cook dealt methamphetamine not on just one occasion, but he did so regularly. He conceded that over a period of six months, he sold approximately a quarter gram of methamphetamine at least twice a week. When Trooper Craig walked around Cook's house, there were two shotguns and a loaded .45 caliber handgun near the drugs and paraphernalia. We acknowledge, as the trial court did, that this is a "recipe for . . . disaster[.]" Tr., Vol. 2 at 102. Although no violence occurred while Cook dealt methamphetamine, there is a likelihood that injury or even death may occur whenever firearms are present during the commission of a crime – whether the injury be suffered by Cook or the community. Based on this evidence, Cook has failed to demonstrate that the nature of his offenses renders his sentence inappropriate.

## B. Character of the Offender

[10] A defendant's life and conduct are illustrative of his character. *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. One relevant

factor in assessing character is a defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. Cook's criminal history consists of check fraud as a Class A misdemeanor, illegal transportation of alcohol as a Class C misdemeanor, and interference with reporting a crime as a Class A misdemeanor. Although Cook's criminal history is not extensive, as the trial court recognized, it still reflects poorly on his character and shows he was not deterred by previous contacts with the criminal justice system from committing the current offenses. *See Reis*, 88 N.E.3d at 1105 (noting that "[e]ven a minor criminal record reflects poorly on a defendant's character").

[11] Cook nonetheless argues that his character suggests a minimum sentence is proper. While Cook was on bond, he knowingly disobeyed a court order and used methamphetamine on three separate occasions. At the sentencing hearing, Cook was asked whether he knew using methamphetamine was a violation of his bond and he answered, "I wasn't really thinking about it." Tr., Vol. 2 at 72. Moreover, after being asked by the trial court and the prosecutor whether he would pass a drug screen at his sentencing hearing, he responded that he would. But in fact, Cook tested positive for methamphetamine, amphetamine, oxycodone, and cannabinoids that day. *See* App. of Appellant, Vol. 2 at 88. Indeed, lying to a tribunal shows a blatant disregard and lack of respect for our judicial system. Cook also knowingly associates himself with drug dealers and users. Cook met his wife in July 2017 knowing that she was a user of

methamphetamine and after he found out she was also a drug dealer, he still associated with her without any reservation. While on bond, Cook was allegedly involved in a police chase with Wall where drugs were also involved. Although Cook was not charged with a crime, he acknowledged he knows Wall, and it shows that he associates himself with people who engage in unlawful behavior. Furthermore, the record indicates that Cook used methamphetamine during the time in which he was solely responsible for taking care of his newborn daughter.

[12] Cook insists that he needs treatment to deal with becoming addicted to methamphetamine due to his prior divorce and the death of his child in 2016. We note that he had an opportunity for treatment but failed to follow through. Cook sought treatment at Community Mental Health Center in March of 2019 – almost three years after the death of his child and around the time he changed his plea in this case. However, he only attended the initial intake appointment and failed to attend the actual program. The record suggests that Cook only sought treatment to lessen the severity of his punishment, not because he genuinely wanted to combat his addiction. Further, Cook's addiction to methamphetamine does not excuse dealing in methamphetamine; *use* and *dealing* are not directly related. We recognize the significant impact a divorce and the loss of a child can have on an individual, but those circumstances do

not justify a person dealing in methamphetamine.[4] Under these circumstances, Cook has also failed to establish that his sentence is inappropriate in light of his character.

# Conclusion

After reviewing the record and giving due consideration to the trial court's sentencing decision, we conclude Cook's seven-year sentence is not inappropriate in light of the nature of the offenses and his character. Accordingly, his sentence is affirmed.

Affirmed.

Bradford, C.J., and Altice, J., concur.

---

[4] Citing *Hoak v. State*, 113 N.E.3d 1209 (Ind. 2019), Cook requests that we acknowledge his addiction and asserts that "crimes concerning addiction are not properly addressed with long prison sentences." Br. of Appellant at 14. In *Hoak*, the defendant pleaded guilty to possession of methamphetamine as a Class B felony and was sentenced to a term of imprisonment followed by a term of probation. Six months later, the defendant was charged with three additional drug possession crimes. On appeal, our supreme court noted that the defendant had "multiple drug-related contacts with the criminal justice system over many years" but she "has yet to receive court-ordered substance abuse treatment." *Id*. The court then remanded the case back to the trial court to determine the defendant's eligibility for substance abuse treatment in a community correction program. We distinguish *Hoak*, noting that the defendant there pleaded guilty to possession, not dealing. Further, unlike in *Hoak*, the trial court here ordered that Cook participate in a drug addiction program while on home detention. Therefore, *Hoak* is unpersuasive. *See, e.g., Shinkle v. State*, 129 N.E.3d 212, 217-18 (Ind. Ct. App. 2019) (holding that the defendant's seventeen-and-a-half-year sentence is not inappropriate for dealing in methamphetamine well above the statutory requirement because the defendant's dealing "was not a one-time event"), *trans. denied*.