FILED

Oct 23 2018, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Karen M. Heard
Vanderburgh County Public Defender's
Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael G. Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Damon L. Maffett,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 23, 2018

Court of Appeals Case No.
82A04-1711-CR-2679

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1702-F4-867

**May, Judge.**

[1] Damon L. Maffett appeals his conviction of and sentence for Level 4 felony unlawful possession of a firearm by a serious violent felon.[1] He presents two issues for review, which we restate as:

1) Whether the trial court abused its discretion when it admitted three minutes of a videotaped police interview of Maffett and police testimony about the presence of handgun ammunition in the apartment; and

2) Whether Maffett's ten-year sentence is inappropriate.

We affirm.

## Facts and Procedural History[2]

[2] On February 8, 2017, Evansville Police Detective Peter DeYoung went to an apartment to contact Maffett for legitimate law enforcement purposes. Detective DeYoung requested assistance from patrolmen in this endeavor. When asked to come out of the apartment, Maffett would not comply. Maffett's significant other, Danielle Burke, who was the registered lessee of the apartment, exited the apartment and confirmed Maffett was inside. Burke told Detective DeYoung no guns were present inside the apartment.

---

[1] Ind. Code § 35-47-4-5 (2016).

[2] We held oral argument on this matter on September 11, 2018, at Castle High School in Newburgh, Indiana. We thank Castle High School staff and students for their hospitality and counsel for their able presentations.

[3]     When police notified Maffett that a K-9 unit was present and was going to enter, Maffett warned the officers that, if the K-9 unit was sent in, he would "blast it." (Tr. Vol. II at 80.) After approximately an hour, Maffett surrendered himself. With a search warrant, the police searched the apartment and found a loaded Mossberg shotgun under the mattress and two types of handgun ammunition elsewhere in the apartment. They also found male clothing in one of the closets of the apartment. Burke confirmed the clothing belonged to Maffett.

[4]     After the State charged Maffett, Burke told Detective DeYoung she had lied about the absence of guns in the apartment. Burke maintained her father had given her the shotgun three years earlier. She also stated Maffett did not "actually live" at the apartment. (Ex. Vol. IV at 93.) At trial, Burke testified Maffett had helped her clean the shotgun.

[5]     After the crime scene investigators examined the shotgun, they determined the registered owner was Wesley Morgan. Morgan confirmed the shotgun belonged to him and gave a detailed description of the shotgun. Morgan testified he was unaware it was missing from his collection and he had last used it "probably a few months before" the police contacted him about it. (Tr. Vol. II at 73.)

[6]     The State charged Maffett with Level 4 felony unlawful possession of a firearm by a serious violent felon. Maffett filed a motion to bifurcate the enhancement

based on his status as a serious violent felon from the underlying charge of unlawful possession of a firearm. The trial court granted the motion.

[7] Prior to trial, Maffett filed a motion *in limine* objecting to the use of the video from an interview Detective DeYoung conducted with Maffett because it included references to both drug-dealing activity and possession of handgun ammunition. Maffett argued the references were prejudicial because they implicated him for prior bad acts. The State agreed that most of the interview was prejudicial, so it redacted all but approximately three minutes, with part of that segment muted.

[8] Maffett still objected to the introduction of the three minutes of videotaped interview, arguing a reference to obtaining the bullets when "a MF'r come wanting 3," (*id*. at 176), was an admission of selling ".3 grams of drugs in exchange for the box of 9-millimeter bullets[.]" (*Id*. at 41-42.) The State argued it had not made that connection. The trial court decided it "didn't hear that or make that connection either," (*id*. at 42), and it overruled Maffett's objection to admission of that portion of the interview.

[9] As the video was played, the court reporter transcribed what she heard. During the interview, Maffett stated he "didn't have no gun." (*Id*. at 130) (errors in original). When asked why he told the police he did, Maffett said, "[i]t was kind of one of them moments like you stay up all night (inaudible) like this, I was just, you know what I'm saying, I was just like popping Adderall, feel me?" (*Id*.) (errors in original). Detective DeYoung asked Maffett about the shotgun

police found during the search. Detective DeYoung asked, "Is that yours?" (*Id.* at 131.) Without being made aware of the make of the shotgun, Maffett replied, "A Mossberg?" and then stated it was a "possibility[.]" (*Id.*) Detective DeYoung asked Maffett whether "if [he] had a gun like a shotgun, that's just for protection right, you're not, you're not trying to shoot the police or nothing like that?" (*Id.*) To which Maffett replied, "No." (*Id.*) The interview also touched on the presence of the handgun ammunition.

[10] As part of its closing argument and without objection from Maffett, the State read from a previously undisclosed transcript of the interview, which was not entered into evidence. The State argued Maffett had said he obtained the ammunition when "a MF'r come wanting 3[.]" (*Id.* at 176.) The State did not, however, provide any explanation for what that statement meant.

[11] The jury found Maffett guilty of possession of a firearm. Maffett then admitted the serious violent felon enhancement in the charging information, and the court entered his conviction. After hearing evidence, the court found mitigators in Maffett's admission to being a serious violent felon and the fact Maffett has five children, but it found Maffett's criminal history to be an aggravator. The trial court sentenced Maffett to ten years and recommended Maffett be provided drug counseling.

# Discussion and Decision

## Admission of Evidence

[12] Maffett argues the trial court erred when it admitted three minutes of a tape-recorded interview and police testimony about the presence of handgun ammunition in the apartment. We review evidentiary rulings for an abuse of discretion. *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion occurs if the trial court misinterpreted the law or if its decision was clearly against the logic and effect of the facts and circumstances before it. *Id.*

### *Videotaped Interview*

[13] Maffett argues the admission of the three minutes of videotaped interview violated Evidence Rule 404. Evidence Rule 404(a) prohibits using evidence of a defendant's "character or character trait . . . to prove that on a particular occasion the person acted in accordance with that character or trait." This rule is meant to deter a jury from pursuing a path of reasoning that leads to "the forbidden inference," which is that a defendant is guilty of the alleged crime because the defendant possesses a bad character trait. *Herrera v. State,* 710 N.E.2d 931, 935 (Ind. Ct. App. 1999). Evidence Rule 404(b) prohibits the use of a defendant's "crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the defendant acted in accordance with that character." An analysis under Evidence Rule 404(b) "necessarily

incorporates the relevancy test of Rule 401 and the balancing test of Rule 403." *Sanders v. State*, 704 N.E.2d 119, 123 (Ind. 1999).

[14] Maffett argues the trial court erred when it permitted admission of the video recording because it impugned his character with an inference of prior bad acts. In particular, Maffett points to two statements:

1. Detective DeYoung's statement to Maffett that, "so if you got a gun, like a shotgun, it's for protection, you're not trying to shoot the police or nothing like that, if it's like you said, someone rolls up three deep because of what you do, that you own a shotgun to protect yourself." (Tr. Vol. II p. 176 line 2-6).

2. Maffett's statement to Detective DeYoung that "I got a whole box of 9's because a MF'r come wanting a 3, I said cool give me the shells." (Tr. Vol. II p. 176 line 12-13).

(Appellant's Br. at 12-13.)

[15] The State admits the video may create an inference Maffett was engaged in activities for which a gun was required for protection, but it argues a "mere inference" of bad acts does not implicate Evidence Rule 404(b). *See Dixson v. State*, 865 N.E.2d 704, 712 (Ind. Ct. App. 2007) (holding a "mere inference of prior bad conduct" does not implicate Evidence Rule 404(b)), *trans. denied*. We agree with the State and the trial court. The language about which Maffett complains is so vague that we cannot say it demonstrates a bad act that could be prejudicial.

[16] Nevertheless, the State argues, if error was present, it was harmless as other evidence supported Maffett's conviction. "[E]rrors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012), *reh'g denied*. Accordingly, error is harmless "if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Id*.

[17] To convict Maffett, the State needed to prove he possessed the shotgun found in the apartment. As Maffett was not seen in possession of the shotgun, the State needed to prove constructive possession. Constructive possession occurs when someone has "the intent and capability to maintain dominion and control over the item." *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999).

[18] The State produced substantial independent evidence Maffett constructively possessed the shotgun. Maffett was inside the apartment where the shotgun was found. Burke initially admitted that Maffett lived with her at the apartment and that Maffett had helped her clean the shotgun. Maffett threatened to "blast" the K-9 unit. (Tr. Vol. II at 80.) During his interview, when Detective DeYoung asked Maffett about a shotgun in the apartment, Maffett asked if it was a Mossberg and said it was possibly his. This evidence was sufficient to infer Maffett was aware the shotgun was in the apartment and he had the capability to use the weapon. *See, e.g.*, *Massey v. State*, 816 N.E.2d 979, 989-90 (Ind. Ct. App. 2004) (evidence of defendant living in the house and admitting knowledge of the gun was sufficient to prove constructive possession). In light

of the evidence in the record, the admission of a nearly incomprehensible video interview was harmless.[3]  *See McCorker v. State*, 797 N.E.2d 257, 267 (Ind. 2003) (substantial cumulative evidence independent of the evidence at issue renders the court's admission of such evidence harmless).

### *Testimony about Ammunition*

[19]     Maffett next argues the trial court abused its discretion by admitting testimony about ammunition found in the apartment because the testimony was not relevant and was more prejudicial than probative.  Evidence Rule 401 states evidence is relevant if "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Evidence Rule 403 provides a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

---

[3] Additionally, Maffett argues that, even if admission of the tape recording itself was not prejudicial, the trial court had allowed it in partially based on the fact that much of it was inaudible or unclear.  However, during closing, the State produced a transcript of the interview and read it to the jury.  Maffett did not object to the reading of the transcript during closing argument; thus, any issue this could raise is waived for our review. *See Tesfamariam v. Woldenhaimanot*, 956 N.E.2d 118, 122 (Ind. Ct. App. 2011) (when complaining party does not object, the issue is waived for appellate consideration).  An exception to the doctrine of waiver arises when errors are so blatant and serious that to ignore them would constitute a denial of fundamental due process, *i.e.*, when fundamental error has occurred. *Madden v. State*, 656 N.E.2d 524, 526 (Ind. Ct. App. 1995), *trans. denied*.

We assume a jury follows the instructions it is given. *See Weisheit v. State*, 26 N.E.3d 3, 20 (Ind. 2015) (appellate court assumes a properly instructed jury follows the instructions given), *reh'g denied, cert. denied* 136 S. Ct. 901 (2016).  The jury here was instructed to rely only on the evidence presented, "which may be either witness testimony or exhibits." (App. Vol. II at 59.)  The jury also was instructed the attorneys would make opening and closing arguments but those arguments were not to be considered evidence. (*Id*. at 44, 45.) Even though the closing arguments may have clarified for some jurors what was said on the tape, the admission remains harmless because the statements were vague and substantial independent evidence was presented to prove Maffett constructively possessed the shotgun.

confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[20]     Maffett alleges the evidence regarding handgun ammunition admitted during Detective DeYoung's testimony was irrelevant and prejudicial because "nobody possesse[s] bullets without a gun." (Tr. Vol. II at 37.) The trial court distinguished the testimony and video statements about ammunition from photographs of the ammunition, which the court excluded because the firearm for which the ammunition would be used was "not the subject of this case" and would be prejudicial. (*Id.* at 114.) The trial court found the testimony and videos showed "whether or not [Maffett] knew items in the location where the shotgun was found . . . [we]re relevant to show whether [Maffett] maintained dominion and control over that area and maintained dominion and control over the shotgun[.]" (*Id.* at 113.) Maffett argues the trial court's statement differentiating the testimony and video from photos was in error as nothing in the testimony or video indicated the location of the ammunition in relation to the shotgun.

[21]     The State counters Maffett's "possession of the ammunition tended to show that he had knowledge of weapons that were inside the apartment, and that he had the capability to maintain dominion and control over such weapons." (Br. of Appellee at 15.) Therefore, the State argues, the ammunition evidence was relevant to the charged offense. However, the State maintains if there was any error, that error was harmless due to the substantial independent evidence the State presented.

[22] We need not determine whether the evidence of the ammunition should have been admitted. "The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction." *Meadows v. State*, 785 N.E.2d 1112, 1121 (Ind. Ct. App. 2003), *trans. denied.* As noted above, the State presented evidence Maffett was in the apartment with the shotgun, lived in the apartment, cleaned the shotgun, and threatened to shoot the K-9 unit. The State presented substantial independent evidence sufficient to infer Maffett was aware of the shotgun in the apartment and was able to use it. Any prejudice inferred from the presence of ammunition for which there was not a gun was slight as neither the video nor Detective DeYoung's statements lingered on that point. *See Hinesley v. State*, 999 N.E.2d 975, 986 (Ind. Ct. App. 2013) (if the evidence as a whole supports the conviction, an inconsequential reference to other evidence does not show prejudice), *reh'g denied, trans. denied.* Therefore, the admission of the video and testimony briefly mentioning handgun ammunition was harmless. *See McCorker*, 797 N.E.2d at 267 (substantial cumulative evidence independent of the evidence at issue renders the court's admission of such evidence harmless).

## Inappropriate Sentence

[23] Under Ind. Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. *Anglemyer v.*

*State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (2007). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). We defer to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012), *reh'g denied*. Maffett, as the appellant, bears the burden of demonstrating his sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[24] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d at 494. The sentencing range for a Level 4 felony is "a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." Ind. Code § 35-50-2-5.5 (2014). The trial court sentenced Maffett to ten years; thus, Maffett received a sentence above the advisory but below the maximum.

[25] Maffett argues his offense was not egregious because he "did not threaten or resist law enforcement with the firearm." (Br. of Appellant at 21.) However, evidence was presented Maffett threatened to "blast" the K-9 unit. (Tr. Vol. II at 80.) Moreover, the evidence suggested the shotgun had been stolen and Maffett knew that. We conclude Maffett's sentence is not inappropriate based on the nature of his offense. *See McBride v. State*, 992 N.E.2d 912, 921 (Ind. Ct. App. 2013) (although defendant used unloaded guns, the fact he used them "in a threatening manner" supported the sentence given), *reh'g denied, trans. denied*.

[26] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson*, 986 N.E.2d at 857. The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Maffett acknowledged he has "several felonies[,]" (Br. of Appellant at 21), but he claims many of the convictions were non-violent.

[27] Contrary to Maffett's assertions, not only did he have six felony convictions and several misdemeanor convictions, but several of the convictions are for violent crimes.[4] Continuing to commit crimes after frequent contacts with the judicial system is a poor reflection on one's character. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007); *see also Connor v. State,* 58 N.E.3d 215, 221 (Ind. Ct. App. 2016) (continued crimes indicate a failure to take full responsibility for one's actions). As such, we cannot agree with Maffett that his sentence is inappropriate based on his character.

---

[4] Maffett's felony convictions include: Class D felony dealing in a substance represented to be a controlled substance, Class C felony battery committed by means of a deadly weapon or resulting in serious bodily injury, Class D felony battery resulting in bodily injury with a victim of less than fourteen years old, Class D felony domestic battery, three counts of Class D felony intimidation, and Class C felony escape.

# Conclusion

[28] Any possible error in the admission of evidence was, at most, harmless. Maffett has not demonstrated his sentence is inappropriate in light of his character and his offense. Accordingly, we affirm.

[29] Affirmed.

Najam, J., and Bailey, J., concur.