

FILED

Dec 20 2019, 6:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathan Belcher,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 20, 2019<br><br>Court of Appeals Case No.<br>19A-CR-830<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Lisa F. Borges,<br>Judge<br><br>Trial Court Cause No.<br>49G04-1710-F3-41224 |

**May, Judge.**

[1] Jonathan Belcher appeals his convictions of and aggregate sentence for two counts of Level 3 felony aggravated battery,[1] one count each of Class B

---

[1] Ind. Code § 35-42-2-1.5.

misdemeanor battery[2] and Class A misdemeanor resisting law enforcement,[3] and the finding that he is an habitual offender.[4] He raises two issues on appeal, which we expand and restate as the following three issues:

> (1) whether there is sufficient evidence to support the trial court's finding that Belcher understood and appreciated the wrongfulness of his conduct;

> (2) whether the trial court abused its discretion in its consideration of Belcher's mental health at sentencing; and

> (3) whether a 53-year-and-180-day sentence is inappropriate in light of the nature of the offenses and Belcher's character.

We affirm.

# Facts and Procedural History

[2] On October 19, 2017, David Smith, a regional sales manager for a chemical coating company, flew from North Carolina to Indianapolis to assist in interviewing applicants for a position in the company's Indianapolis office. Amjad Farah, Smith's friend and colleague, traveled from the company's Michigan office to Indianapolis to also assist with the interviews. After Smith and Farah finished conducting the interviews, they went to a downtown

---

[2] Ind. Code § 35-42-2-1.

[3] Ind. Code § 35-44.1-3-1.

[4] Ind. Code § 35-50-2-8.

Indianapolis steakhouse for dinner. They finished dinner around 6:30 pm and walked to Monument Circle.

[3] Around this same time, Jennifer Crouch, her husband, and her children were visiting Monument Circle. They were on vacation in Indianapolis to see family and visit local attractions. Crouch's husband and children walked up the steps of the Indiana State Soldiers and Sailors Monument, and Crouch stayed toward the base of the memorial to take a picture of her family. Belcher approached Crouch and asked her what she was doing. She said that she was at the monument with her children, and Belcher said, "you don't have any kids." (Tr. Vol. II at 109.) Belcher was aggressive and his tone of voice was mean. Belcher walked away for a brief period and then returned. Belcher pushed Crouch and she fell flat on the ground. Belcher then backed up to get a running start and kicked the front of Crouch's head "like a football kickoff for a field goal kicker." (*Id*. at 92.) A bystander ran to Crouch, and Belcher walked around the monument towards Smith and Farah.

[4] Smith and Farah were admiring the Soldiers and Sailors Monument when they heard Belcher angrily yell out "mother f[*****]." (*Id*. at 29.) As Smith turned his head toward the noise, Belcher punched him in the side of the head. Smith went stiff and fell to the ground. Belcher started swinging at Farah, and one of Belcher's punches grazed Farah. When other bystanders started to yell, Belcher walked away.

Officers responded to the scene, encountered Belcher, and commanded him to get on the ground. Belcher shouted at the officers, "this is my ship" or "get off my ship." (*Id*. at 146.) When officers continued to command Belcher to get on the ground, he responded "F[***] you. You get on the ground." (*Id*. at 132.) Belcher turned and briskly walked away from the officers. Belcher ignored further repeated directions to stop and warnings that officers were going to deploy their tasers. Eventually, an officer used a taser on Belcher. Belcher fell to the ground and resisted officers trying to cuff him, but officers were able to secure him and take him into custody. Belcher made a comment to a State Police Trooper on the scene that the Indiana State Police did not have jurisdiction over Monument Circle. Rather, Belcher asserted the Indianapolis Metropolitan Police Department ("IMPD") had jurisdiction.

Ambulances rushed Smith and Crouch to local hospitals. Smith underwent brain surgery in Indianapolis, and doctors placed him in a medically induced coma. He stayed in an Indianapolis hospital for three weeks before being transferred to a brain and spinal rehabilitation facility in Atlanta, Georgia. He was incapacitated and required around-the-clock care. He was fed through a feeding tube and received drugs intravenously. After seven months at the Atlanta facility, his family decided to cease the life-sustaining measures and Smith died on May 28, 2018.

Crouch was released from the hospital approximately seven hours after the incident. Crouch briefly lost consciousness after Belcher kicked her. At the hospital, she had vertigo and struggled to sit in a chair. She also sustained an

eye injury. Crouch's husband had to take six weeks off work to care for her. She had balance issues that required her to use a wheelchair for a period and then a walker, and she needed to attend physical therapy. Crouch also saw a neurologist, who diagnosed her with a spinal fluid leak. Crouch thought she would need surgery to correct that leak, but it resolved itself without surgery.

[8] The court referred Belcher to psychologist Dr. Don Olive to perform a competence and sanity evaluation, and he met with Belcher at the Marion County Jail on November 17, 2017. Dr. Olive reviewed records from the Marion County Jail prior to visiting with Belcher. Those records indicated Belcher's previous diagnoses included Schizophrenia, Bipolar Disorder, and Depression. Belcher had received both inpatient and outpatient mental health treatment in the past and was released from Community Hospital North on October 11, 2017. During Belcher's interview with Dr. Olive, Belcher mentioned that he had been found not responsible by reason of insanity in a previous case. He also talked about being stuck in a computer game and being hunted by zombies. Dr. Olive concluded with reasonable psychological certainty that Belcher was both not competent to stand trial and not criminally responsible at the time of the alleged offenses.

[9] Dr. George Parker, a medical doctor and professor of clinical psychology at the Indiana University School of Medicine, also performed a competency evaluation. He met with Belcher at the Marion County Jail on November 30, 2017. Belcher began the interview by asking Dr. Parker, "[A]re you from a water border or a land border?" (App. Vol. II at 83.) During the interview,

Belcher repeatedly punched a code into an imaginary keypad on the interview room partition. Dr. Parker found this behavior odd because, based on his experience in conducting many competency and sanity evaluations, defendants typically do not advertise their symptoms at the beginning of an interview. Belcher claimed to be living in a video game and described the court proceedings as part of the game. He mentioned that he had been found not responsible by reason of insanity in a previous case. He also claimed to see holograms of great white sharks. Dr. Parker learned Belcher lived in a general population unit at the jail and did not cause any problems in the unit. Dr. Parker also reviewed Belcher's medical records, including a competence and sanity report he himself had prepared in 2015 concerning a criminal case involving Belcher. In 2015, Belcher told Dr. Parker that he became paranoid when he smoked marijuana without also drinking alcohol. Dr. Parker concluded with reasonable medical certainty that Belcher "may meet criteria for diagnoses of malingering, schizophrenia and/or bipolar disorder" and opined that Belcher was not competent to stand trial.[5] (*Id.* at 89.) Dr. Parker thought there was a possibility Belcher was malingering because of the difference in Belcher's behavior between when he was in the general population unit and when Dr. Parker interviewed him. Also, Belcher's description of the holograms he claimed to see was not typical of someone with schizophrenia, and Belcher's

---

[5] "Malinger" is defined as "to pretend or exaggerate incapacity or illness (as to avoid duty or work)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/malinger (last visited December 4, 2019).

mental health records from the jail showed he campaigned to have his medication dosage increased.

[10] On December 12, 2017, the trial court found Belcher not competent to stand trial and committed him to the Indiana Family and Social Services Administration ("FSSA"). On June 12, 2018, FSSA notified the trial court that Belcher had regained competency to stand trial, and the sheriff returned Belcher to the Marion County Jail.

[11] Dr. Parker met with Belcher again at the Marion County Jail on August 8, 2018, to perform a sanity evaluation. Belcher asked Dr. Parker, "are you the one [sic] said I was lying?" (*Id*. at 142.) Belcher claimed he was hallucinating at the time of the offenses and explained he had been found not responsible by reason of insanity in a previous case. Belcher claimed the victims were zombies. He described them as "in [his] face." (*Id*. at 148.) He also said "[i]t looked like they was [sic] about to run in on me." (*Id*.) Dr. Parker examined Belcher's jail mental health records and found Belcher reported to the jail mental health staff that he last used marijuana on the day of his arrest. Jail staff also told Dr. Parker that Belcher did not act agitated while confined in his dorm. Ultimately, Dr. Parker concluded with a reasonable degree of medical certainty that Belcher was under the influence of voluntary intoxication at the time of the offenses and, although he had a mental illness at the time, he had been able to appreciate the wrongfulness of his actions.

[12]    The court also referred Belcher to psychologist Dr. Stephanie Callaway for competency and sanity evaluations.  She met with Belcher at the Marion County Jail on October 1, 2018.  During the interview, Belcher denied ever using illicit substances, which was inconsistent with his history.  Belcher said he thought he was on a spaceship at the time of the offenses.  He also described being surrounded by zombies and feeling like he was going to be attacked.  He told Dr. Callaway that a voice in his head gave him commands and that he needed to follow the commands in order to avoid being attacked.  He said he hit Couch because he "thought she was trying to profile me to an assassination agency to get me killed." (*Id*. at 177.)  He said the voice in his head told him to go around the monument and hit Smith, so he did.  Belcher also told Dr. Callaway that he did not see the police officers until one of the officers deployed his taser.  Dr. Callaway noted the security footage of Monument Circle in the hours before the offenses showed Belcher talking to himself and acting agitated.  Dr. Callaway concluded with a reasonable degree of psychological certainty that Belcher was competent to stand trial.  She also opined Belcher suffered from a mental disease and lacked the ability to perceive the wrongfulness of his actions at the time of the offenses because of the mental disease's symptoms.

[13]    The State charged Belcher with two counts of Level 3 felony aggravated battery and one count each of Level 5 felony battery resulting in serious bodily injury,[6]

---

[6] Ind. Code § 35-42-2-1.

Level 6 felony battery resulting in moderate bodily injury,[7] Class B misdemeanor battery, and Class A misdemeanor resisting law enforcement. The State also filed an information alleging Belcher was a habitual offender. The court conducted a bench trial on February 7, 8, and 19, 2019. At trial, Belcher did not contest the facts of the offenses, but rather he contended that he was not responsible by reason of insanity. Dr. Olive, Dr. Parker, and Dr. Callaway each testified regarding their evaluations of Belcher. At the conclusion of trial, the court rendered a verdict of guilty but mentally ill and entered a judgment of conviction on all counts. The court also determined Belcher to be an habitual offender.

[14] At a sentencing hearing on March 20, 2019, the court vacated the Level 6 felony battery conviction and the Level 5 felony battery conviction. The State advocated for an aggravated sentence, noting the harm Smith endured was greater than the harm needed to meet the elements of aggravated battery, Belcher was on pre-trial release for a criminal trespass charge when he committed the crimes, and Belcher had a significant criminal history, including four felony convictions and eleven misdemeanor convictions. The State also pointed out that Belcher failed to successfully complete probation multiple times and refused mental health treatment on previous occasions. Further, there were multiple victims in this case and a break in time between Belcher's attacks. Belcher argued his severe mental illness should be considered a

---

[7] Ind. Code § 35-42-2-1.

mitigator and noted his previous commitments to the Indiana Department of Correction have not addressed his mental health problems.

[15] The court found the following aggravating factors: the offenses occurred within the presence and hearing of minors, Belcher was on pre-trial release at the time of the offenses, and Belcher appeared to lack remorse. The court also stated: "The only mitigator that I could possibly find is his history of mental illness. And I do believe he does have a mental illness." (Tr. Vol. III at 84.) Ultimately, the court imposed a sentence of sixteen years for the first count of Level 3 felony aggravated battery, enhanced by twenty years due to the finding that Belcher was an habitual offender; sixteen years for the second count of Level 3 felony aggravated battery; 365 days for Class A misdemeanor resisting law enforcement; and 180 days for Class B misdemeanor battery. The court ordered all the sentences served consecutively, for an aggregate executed sentence of 53 years and 180 days.

# Discussion and Decision

## 1. Sufficiency of the Evidence

[16] Belcher argues there was insufficient evidence to support the trial court's finding that he understood and appreciated the wrongfulness of his conduct. In order to obtain a conviction, the State must prove beyond a reasonable doubt the defendant committed the charged offense. Ind. Code § 35-41-4-1. However, when the defendant raises the defense of insanity, as in Belcher's case, the

burden of proof shifts to the defendant to prove the defense by a preponderance of the evidence. *Id*. Indiana Code section 35-41-3-6 provides:

> (a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.

> (b) As used in this section, 'mental disease or defect' means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested by repeated unlawful or antisocial conduct.

A mentally ill defendant who fails to establish that he was unable to appreciate the wrongfulness of his actions may be found guilty but mentally ill.[8] *Galloway v. State*, 938 N.E.2d 699, 708 (Ind. 2010), *reh'g denied*.

[17] Belcher "faces a heavy burden" because he is appealing from a negative judgment. *Patterson v. State*, 110 N.E.3d 429, 432 (Ind. Ct. App. 2018). As our

---

[8] As our Indiana Supreme Court has explained:

> A verdict of guilty but mentally ill requires an evaluation and treatment of the defendant's mental illness during his or her incarceration 'in such a manner as is psychiatrically indicated,' but otherwise imposes the same criminal sentence as a standard conviction of guilt. Ind. Code § 35-36-2-5(a), (c). By contrast, a verdict of nonresponsibility by reason of insanity may result in the defendant's civil commitment if the trial court finds by clear and convincing evidence that the defendant is mentally ill and either dangerous or gravely disabled. I.C. § 35-36-2-4.

*Barcroft v. State*, 111 N.E.3d 997, 1002 n.2 (Ind. 2018).

Indiana Supreme Court has explained, "[w]hether or not a defendant can appreciate the wrongfulness of his conduct is a question for the trier of fact." *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004). Consequently, "we will reverse only when the evidence is without conflict and leads only to the conclusion that the defendant was insane when the crime was committed." *Id*. We will not reweigh the evidence or judge the credibility of the witnesses, and we will consider the evidence and make all reasonable and logical inferences in the light most favorable to the verdict. *Id*. We note that "[o]pinion testimony from psychiatrists, psychologists, and other mental-health experts is central to a determination of insanity." *Barcroft v. State*, 111 N.E.3d 997, 1003 (Ind. 2018). Their specialized knowledge and training allow them to provide insight and assist the factfinder in making a sensible and educated determination regarding the defendant's mental condition. *Id*. However, "[e]ven when experts are unanimous in their opinion, the factfinder may discredit their testimony—or disregard it altogether—and rely instead on other probative evidence from which to infer the defendant's sanity." *Id*.

[18] There was not unanimous credible, expert testimony that Belcher did not appreciate the wrongfulness of his actions at the time of these offenses. While two of the doctors who evaluated Belcher opined that Belcher did not appreciate the wrongfulness of his actions, Dr. Parker determined to a reasonable degree of medical certainty that Belcher did appreciate the wrongfulness of his actions. Dr. Parker noted Belcher's self-report of marijuana use. Also, Belcher's behavior during his interviews with Dr. Parker differed

from Belcher's behavior while in the jail. Belcher became angry with Dr. Parker during both interviews, accused Dr. Parker of thinking he was lying in his second interview, and insisted he was hallucinating at the time of the offenses.

[19] Belcher discounts Dr. Parker's conclusion and the trial court's finding that Belcher was under the influence of marijuana at the time of the offenses because the only indication of marijuana use on the day of the offenses is Belcher's self-report to jail mental health staff when he was returned to the jail from Logansport State Hospital. Belcher notes that no toxicology test occurred upon Belcher's admission to the jail. However, Belcher's self-report is evidence in the record from which the trial court could have determined Belcher was under the influence of marijuana at the time of the offense, and we will not reweigh the evidence or substitute our judgment for that of the trial court. *See Barcroft*, 111 N.E.3d at 1008 (holding evidence of defendant's demeanor as well as flaws in expert opinion testimony and absence of history of mental illness was sufficient to support inference of sanity).

[20] Belcher told Dr. Callaway that a voice inside his head commanded him to attack Couch and Smith. However, he did not mention receiving auditory commands at the time of the offenses to either of the previous two doctors who evaluated him. Belcher also told each doctor that he had previously been found not responsible by reason of insanity in another criminal case and suggested the same result should be reached in the case at bar. On examination by the court, Dr. Olive acknowledged that some people with schizophrenia will sometimes

use their knowledge of the illness to exaggerate their symptoms for their own perceived benefit. Consequently, the trial court's decision to discount the conclusions of Dr. Olive and Dr. Callaway was not unreasonable. *See Thompson*, 804 N.E.2d at 1150 (holding evidence supported trial court's finding that defendant was guilty but mentally ill despite expert witness opinions that defendant did not appreciate the wrongfulness of her actions at the time of the offenses).

Additionally, other evidence in the record suggests Belcher appreciated the wrongfulness of his actions. He attempted to evade arrest. He walked away from the responding police officers and had the presence of mind to claim the IMPD, rather than the State Police, had jurisdiction over Monument Circle. Belcher also was sufficiently aware of his surroundings to pick vulnerable victims. He initiated contact with and attacked both Smith and Couch, but Belcher walked away when other people intervened and confronted him. Therefore, sufficient evidence supports the trial court's rejection of Belcher's insanity defense. *See Fernbach v. State*, 954 N.E.2d 1080, 1088 (Ind. Ct. App. 2011) (holding evidence was sufficient to support jury verdict that defendant was not insane at time of offenses), *trans. denied*.

## 2. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court, and we review such decisions only for an abuse of discretion. *Morrell v. State*, 118 N.E.3d 793, 796 (Ind. Ct. App. 2019), *clarified on reh'g on other grounds*, 121 N.E.3d 577 (Ind. Ct. App. 2019), *trans. denied*. "An abuse of discretion occurs if

the decision is clearly against the logic and effect of the facts and circumstances." *Allen v. State*, 875 N.E.2d 783, 788 (Ind. Ct. App. 2007). When a trial court imposes a felony sentence, it is required to issue a sentencing statement "that includes a reasonably detailed recitation of the trial court's reasons for the sentence imposed." *Anglemyer v. State*, 868 N.E.2d 482, 484-85 (Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007). If the court finds aggravating or mitigating circumstances, "the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating." *Id*. at 490. A trial court may abuse its discretion in imposing a sentence by failing to enter a sentencing statement, identifying aggravating and mitigating factors the record does not support, omitting reasons clearly supported in the record and advanced for consideration, or stating reasons for sentence that are improper as a matter of law. *Id*. at 490-91.

[23] Belcher argues the trial court's sentencing statement does not demonstrate consideration of the mitigating weight attributable to his mental illness. He argues he lacks the ability to control his behavior because of his mental illness. He also claims his ability to function is limited as a result of his longstanding mental illness and argues his illness led him to commit these offenses.

[24] "The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor. Nor is the court required to give the same weight to proffered mitigating factors as the defendant does." *Comer v. State*, 839 N.E.2d 721, 728 (Ind. Ct. App. 2005) (internal citation and quotation

marks omitted), *trans. denied*. However, when sentencing a guilty but mentally ill defendant, the trial court "should at a minimum carefully consider on the record what mitigating weight, if any, to accord to any evidence of mental illness[.]" *Weeks v. State*, 697 N.E.2d 28, 30 (Ind. 1998).

[25]  The trial court's sentencing statement indicates it considered Belcher's mental health. In fact, the trial court identified Belcher's mental illness as the "only mitigator that I could possibly find[.]" (Tr. Vol. III at 84.) It noted that Belcher failed to take advantage of help that had been offered in the past and explained "that each and every time [Belcher] is given the opportunity by some court for rehabilitation through anger control classes, domestic violence classes, any kind of alternative to simply being locked up that he's failed. And he's generally failed by committing a new offense." (*Id*. at 81.) The court also observed that Belcher's behavior during trial shows his illness can be managed by medication. Therefore, the trial court considered Belcher's mental illness and its implicit decision not to give his mental illness much mitigating weight was not an abuse of discretion. *See Prowell v. State*, 787 N.E.2d 997, 1005 (Ind. Ct. App. 2003) (holding trial court did not abuse its discretion when it considered but assigned minimal mitigating weight to defendant's mental illness), *trans. denied*.

### 3. Appropriateness of Sentence

[26]  We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. App. R. 7(B). Our role in reviewing a sentence pursuant to Appellate Rule 7(B) "should be to

attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "The defendant bears the burden of persuading this court that his or her sentence is inappropriate." *Kunberger v. State*, 46 N.E.3d 966, 972 (Ind. Ct. App. 2015). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

[27] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). A Level 3 felony is punishable by imprisonment for a fixed term between three years and sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5. A finding that a defendant is an habitual offender allows the court to enhance the defendant's sentence by an additional six to twenty years, Ind. Code § 35-50-2-8, and the trial court added twenty years to the first of Belcher's Level 3 felony sentences. A person convicted of a Class A misdemeanor may be sentenced to a fixed term of not more than one year. Ind. Code § 35-50-3-2. Also, the maximum sentence for a Class B misdemeanor is 180 days. Ind. Code § 35-50-3-3. Fifty-three years and 180 days is the maximum sentence Belcher could have received. In fact, the trial court observed that Belcher's sentence represents "the most time that I can give him." (Tr. Vol. III at 86.)

[28]     The nature of Belcher's offenses is particularly troubling. Belcher's assaults on Smith and Crouch were unprovoked, violent, and senseless. Belcher attacked the victims in public and in front of children. The victims were strangers to Belcher, out-of-town visitors admiring one of Indianapolis' signature attractions. The victims sustained severe injuries, with Smith's injuries ultimately proving fatal. Crouch temporarily lost consciousness and required extensive medical care to recover from her injuries. Further, Farah testified to the emotional impact he suffered as a result of watching Belcher attack Smith, and Smith's family and friends highlighted for the court the pain Smith's loss caused them. The nature of Belcher's offenses merits a sentence above the advisory. *See Reis v. State*, 88 N.E.3d 1099, 1104 (Ind. Ct. App. 2017) (holding egregious nature of defendant's offense supported near-maximum sentence).

[29]     "When considering the character of the offender, one relevant fact is the defendant's criminal history. The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Maffett v. State*, 113 N.E.3d 278, 286 (Ind. Ct. App. 2018) (internal citation omitted). We note Belcher's significant criminal history. Prior to the case at bar, Belcher accumulated four felony and eleven misdemeanor convictions, some of which were violent crimes. For example, Belcher has multiple convictions of Class A misdemeanor battery resulting in bodily injury and a conviction of Class C felony battery resulting in serious bodily injury. Thus, we cannot say Belcher's sentence is inappropriate given his character. *See Shinkle v. State*, 129 N.E.3d 212, 217-18 (Ind. Ct. App. 2019) (holding sentence

was not inappropriate and observing that the defendant's "extensive criminal history . . . reflects poorly on his character"), *trans. denied*.

# Conclusion

[30] Sufficient evidence supports the trial court's verdict of guilty but mentally ill. It is undisputed that Belcher suffers from a mental illness. However, there is sufficient evidence that he appreciated the wrongfulness of his actions. Further, the trial court did not abuse its discretion at sentencing by considering but giving little weight to Belcher's history of mental illness, and we cannot say that Belcher's sentence is inappropriate given the nature of his offenses and his character. Consequently, we affirm the trial court.

[31] Affirmed.

Najam, J., and Bailey, J., concur.