## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 02 2020, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Alyssa J. Devine<br>Certified Legal Intern | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| Joel M. Schumm<br>Appellate Clinic<br>Indianapolis, Indiana | Tiffany A. McCoy<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tammy Echeverria,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 2, 2020<br><br>Court of Appeals Case No.<br>19A-CR-1459<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Alicia A. Gooden, Judge<br><br>Trial Court Cause No.<br>49G21-1807-F2-21817 |

**Baker, Judge.**

[1] Tammy Echeverria appeals her convictions and the sentence imposed by the trial court for Level 2 Felony Dealing in Methamphetamine[1] and Level 2 Felony Dealing in a Narcotic Drug,[2] arguing that the trial court erred by admitting certain evidence—including testimony about a law enforcement team, ledgers, and firearms—because it was unduly prejudicial. Echeverria also contends that she did not have a fair opportunity to contest the contents of her Pre-Sentence Investigation Report (PSI) because it was furnished to her just before her sentencing hearing. Finding that the trial court committed, at most, only harmless error and that Echeverria is not entitled to relief with regards to the PSI, we affirm.

## Facts

[2] On July 3, 2018, Indianapolis Metropolitan Police Department (IMPD) Officer Lona Douglas met with a SWAT team to discuss the execution of a search warrant for a home in Indianapolis. IMPD officers had been surveilling the home and observed Echeverria and four other individuals entering the residence. Later, two individuals left the home, got into a vehicle, and drove away. IMPD officers conducted a traffic stop of that vehicle, discovered that the two individuals were Echeverria's niece and nephew, and found approximately

---

[1] Ind. Code § 35-48-4-1.1(a)(2), -1.1(e)(1).

[2] I.C. § 35-48-4-1(a)(2), -1(e)(1).

100 grams of a substance later determined to be methamphetamine and over $14,000 on their persons. Officers arrested the two and placed them in custody.

[3] Shortly thereafter, the SWAT and the IMPD southwest "Flex" teams executed the search warrant. SWAT entered first, and upon entry, found a man sitting on a couch in the living room and Echeverria lying on a bed in the bedroom. Officers from both teams then searched the residence and discovered approximately 447.424 grams of a substance later determined to be methamphetamine, 57.110 grams of a substance later determined to be heroin, scales with drug residue on them, and other drug paraphernalia.

[4] In the bedroom specifically, officers found $16,000, four firearms, a woman's clothing, and bedding. They also discovered roughly twenty-eight pages of ledgers of drug transactions featuring multiple entries of dates, names, and dollar amounts. The officers *Mirandized*[3] both Echeverria and the man and asked them questions. Echeverria admitted to living at that residence and selling narcotics, but claimed that she only did it to pay off her son's outstanding debts. They were subsequently arrested.

[5] On July 5, 2018, the State charged Echeverria with one count of Level 2 felony dealing in methamphetamine, one count of Level 2 felony dealing in a narcotic drug, and one count of Level 6 felony maintaining a common nuisance. On November 21, 2018, Echeverria filed a written request for copies of the ledgers

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

pursuant to Indiana Evidence Rule 404(b). Echeverria feared that any prior bad acts evidenced by the notations in the ledgers would unduly prejudice her case and would only prove that she had acted in conformity with those acts. The State did not respond to Echeverria's request and ultimately did not provide copies of the ledgers until March 15, 2019—three days before trial.

[6] The State moved to dismiss the maintaining a common nuisance count on March 14, 2019, which the trial court granted. Echeverria's three-day jury trial began on March 18, 2019. During the trial, officers from the IMPD "Flex" team testified about the circumstances surrounding the July 3, 2018, search and arrest. At one point, the State asked Officer Clayton Powell about what the "Flex" team does, and he replied that "[w]e are a proactive unit tasked with reducing violent crime, going after targeted violent offenders involved with firearms, narcotics—[.]" Tr. Vol. II p. 185. Echeverria's counsel objected, arguing that Officer Powell's testimony improperly characterized Echeverria as a violent criminal. The trial court overruled the objection. The trial court also ruled, over Echeverria's objections, that most of the ledgers and the four firearms would be admissible.

[7] On March 20, 2019, the jury found Echeverria guilty as charged. On May 9, 2019, the probation department provided Echeverria with her PSI, just one day before her initial sentencing hearing. However, the trial court continued the hearing to May 29, 2019, on which day it sentenced Echeverria to an aggregate term of ten years, with five years to be executed in the Department of Correction, two years to be served on community corrections, two years

suspended to probation, and one year wholly suspended. Echeverria now appeals.

# Discussion and Decision

# I. Admission of Evidence

First, Echeverria argues that the trial court erred by admitting certain evidence—including testimony about a law enforcement team, ledgers, and firearms—because it was unduly prejudicial. When there is a challenge to a trial court's admission of evidence, we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances before it. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). This Court will sustain a trial court's decision regarding the admission of evidence "if it can be done on any legal ground apparent in the record." *Jester v. State*, 724 N.E.2d 235, 240 (Ind. 2000).

Indiana Evidence Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." In other words, even if particular evidence is probative and could assist a jury in reaching its decision, the trial court can still exclude the admission of said evidence if the trial court believes that the evidence will overtly prejudice one party for any of the aforementioned reasons. Furthermore, Indiana Evidence Rules 404(a)(1) and 404(b)(1) prohibit the introduction of specific character

traits or bad acts to prove that, in this instance, the defendant acted in conformity with those traits or prior bad acts.

### *Officer Testimony*

First, there is the testimony from Officer Powell describing the role of the IMPD "Flex" team: "[w]e are a proactive unit tasked with reducing crime, going after targeted violent offenders involved with firearms, narcotics—[.]" Tr. Vol. II p. 185.

Echeverria contends that this testimony unduly prejudiced her because Officer Powell's description of the "Flex" team painted her as a violent felon who traffics in firearms and narcotics. Echeverria's argument is unavailing. Officer Powell's statement did not characterize Echeverria as a violent criminal. Rather, as the trial court pointed out, Officer Powell is "simply answering the question of what he does for a living and the purpose of the flex team." *Id.* at 185. It was important for the jurors to understand Officer Powell's position and the work that the "Flex" team does in these types of situations.

Accordingly, there was high probative value in the testimony. As to the testimony's prejudicial value, Echeverria is correct in pointing out that "prejudice may arise in a jury trial when a defendant is identified and *repeatedly* referred to as a 'serious violent felon.'" *Imel v. State*, 830 N.E.2d 913, 918 (Ind. Ct. App. 2005) (quoting *Spearman v. State*, 744 N.E.2d 545, 550 (Ind. Ct. App. 2001)) (emphasis added). The problem is that this was the only testimony where Officer Powell made any remark about how the "Flex" team specializes in

targeting violent offenders. Thereafter, Officer Powell answered questions about the situation based on first-hand, personal experience and never directly characterized Echeverria as violent. In weighing this testimony's probative value with its prejudicial effect, we have a difficult time believing that Echeverria was unduly prejudiced by this lone statement. Thus, the trial court did not err by admitting this evidence.

### *Ledgers*

Next, there are the ledgers. The roughly twenty-eight pages of ledgers contained names, dates, and dollar amounts allegedly connected with Echeverria's prior drug transactions.

As a preliminary matter, Indiana Evidence Rule 404(b)(2), states, in relevant part, the following:

> (2) . . . On request by a defendant in a criminal case, the prosecutor must:
>
>> (A) provide reasonable notice of the general nature of any such evidence [of crimes, wrongs, or other acts] that the prosecutor intends to offer at trial; and
>>
>> (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

According to Echeverria, in order for the State to permissibly use the ledgers as 404(b) evidence, the State has to provide her with information about the nature of the evidence or, in the alternative, receive explicit permission from the trial

court to introduce the ledgers during trial. *See, e.g.*, *Hatcher v. State*, 735 N.E.2d 1155, 1158 (Ind. 2000).

[15] However, it is well established that "[d]etermining whether the State's notice was reasonable requires an examination of whether the *purpose* of the notice provision was achieved in light of the circumstances of a particular case." *Id.* (emphasis in original). And in this particular case, the State provided Echeverria with photocopies of the ledgers at least three days before trial, and there was a high likelihood of Echeverria knowing that the State would enter the ledgers as evidence. After all, the officers questioned Echeverria about the items found on the night of the search, and Echeverria knew that she had been charged with serious drug offenses. Further, the fact that Echeverria specifically requested copies of the ledgers demonstrates that she knew the general nature of the evidence that the State would introduce at trial. Based on these circumstances, it is apparent that Echeverria did, in fact, have reasonable notice of the State's intent to use the ledgers as evidence. With this information in mind, the State met its burden, and there was no violation of 404(b)'s notice requirement.

[16] In terms of whether the ledgers were unduly prejudicial, for 404(b) evidence, the trial court had to (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than a person's propensity to engage in similar criminal behavior; and then (2) balance the probative value of that evidence against its prejudicial effect. *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind. 2003).

[17] We concede that Echeverria raises strong arguments about how the ledgers might impugn her character and paint her as a repeat narcotics dealer. After all, the ledgers show names, dates, and inscriptions of past drug deals all connected with Echeverria's actions. So, in that sense, the ledgers are somewhat prejudicial and potentially violate Rule 404(b)'s strictures. However, to say that the ledgers have no probative value is simply incorrect.

[18] As the State highlights, "the ledger is a tool commonly used by drug dealers, and [Echeverria's] mere possession of the ledgers was evidence of her present intent to deal." Appellee's Br. p. 16. We agree. Indiana Evidence Rule 404(b)(2) permits evidence of a crime, wrong, or other inadmissible act for purposes other than to prove a person's character, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In this instance, the ledger can be proffered, along with other evidence discovered by the SWAT and "Flex" teams, to show Echeverria's intent to deal in illegal narcotics. Additionally, the ledgers could be proffered to identify Echeverria and showcase that she, as opposed to any other occupants of the house, is the one currently dealing in methamphetamine and heroin. Further, the ledgers demonstrate Echeverria's preparation for subsequent drug transactions, especially considering that the ledgers were found alongside drug scales with residue on them, large sums of money, and huge quantities of the drugs themselves.

[19] The ledgers have substantial probative value for purposes of establishing intent, identity, or even preparation, and while they might have some prejudicial effect,

it does not outweigh their probative value. As such, the trial court did not err when it admitted these ledgers into evidence.

### *Firearms*

[20] Finally, there are the four firearms. Echeverria argues that the introduction of the four firearms unduly prejudiced her and irreparably painted her as a violent individual. According to Echeverria, "[t]he State should not have been allowed to bring the guns in the courtroom for the jury's review when neither firearms nor violence was an element of [Echeverria's] charged offenses." Appellant's Br. p. 31.

[21] As a preliminary matter, Echeverria is correct in citing *Brown v. State*, in which this Court ruled that the State's introduction of a shotgun, duct tape, and ski masks "had no relevancy to the issue of Brown's guilt or innocence on the charge of possessing an unlicensed handgun, nor do they prove or disprove any material fact in this case." 747 N.E.2d 66, 68 (Ind. Ct. App. 2001). The *Brown* Court went on to state that even if the evidence had "but a scintilla of relevancy," it would nevertheless be unduly prejudicial and irreparably harm the defendant. *Id.* at 69. Here, because possession or use of a firearm does not comprise any elements of the crimes with which Echeverria was charged, the introduction and admission of the firearms did, in some capacity, prejudice Echeverria's case.

[22] However, the nature of Echeverria's criminal charges is different from that in *Brown*. Echeverria was charged with Level 2 felony dealing in

methamphetamine and in a narcotic drug, and our Supreme Court has previously held that the presence or possession of a firearm near or by a criminal defendant, along with a significant amount of drugs and paraphernalia, can support a conclusion that the defendant had the intent to deliver. *J.L.H. v. State*, 642 N.E.2d 1368, 1370 (Ind. 1994). In other words, the firearms here have probative value—to prove Echeverria's intent to deal in narcotics. As the State points out, "the four guns in this case made it more probable that [Echeverria] intended to distribute the large amount of methamphetamine and heroin." Appellee's Br. p. 19. Thus, the trial court did not err by admitting this evidence.

### *Harmless Error*

[23] We concede that the ledgers and the four firearms had some prejudicial effect for Echeverria's case. However, even if we were to find that the trial court erred by admitting them as evidence, that error was, at most, harmless. "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Corbett v. State*, 764 N.E.2d 622, 628 (Ind. 2002). Specifically, we look at whether the defendant's convictions were supported by substantial independent evidence of guilt and whether the challenged evidence contributed to the conviction. *Maffett v. State*, 113 N.E.3d 278, 283 (Ind. Ct. App. 2018).

[24] In looking at the record as a whole, we find that there was overwhelming independent evidence supporting Echeverria's convictions. Echeverria herself confessed to dealing in large quantities of drugs in order to pay off her son's

outstanding debts; her clothes and possessions were intermingled with the drugs and paraphernalia, *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999) (reiterating that mingling of contraband with defendant's own possessions implies control); law enforcement discovered excessive amounts of cash; and, most importantly, there were large quantities of drugs, scales, and paraphernalia for dealing found inside the home, *Beverly v. State*, 543 N.E.2d 1111, 1115 (Ind. 1989) (finding that "evidence of appellant's possession of a large quantity of drugs and the paraphernalia necessary to cut, package, and sell it" is sufficient to sustain a conviction for possession with intent to deliver); *see also McGuire v. State*, 613 N.E.2d 861, 864 (Ind. Ct. App. 1993) (holding that circumstantial evidence of intent to deliver, such as possession of a large quantity of drugs, large amounts of currency, scales, plastic bags, a loaded firearm, and other paraphernalia can support a conviction).

[25] The substantial independent evidence in the record demonstrates that Echeverria would have been convicted of the two dealing charges irrespective of the admission or exclusion of the ledgers or firearms. And on the whole, the discussion surrounding the contested evidence comprised only a short amount of time during the course of Echeverria's three-day trial. This makes it all the more likely that the officer's testimony, the ledgers, and the four firearms did not affect Echeverria's substantial rights. Accordingly, because the trial court committed, at most, only harmless error, we will not reverse the trial court's admission decisions on this basis.

# II. Pre-Sentence Investigation Report

[26] Next, Echeverria argues that she did not have a fair opportunity to contest the contents of her PSI because it was furnished to her just before her sentencing hearing.

[27] Pursuant to Indiana Code section 35-38-1-12(b), "[t]he court shall furnish the factual contents of the presentence investigation or a copy of the presentence report *sufficiently in advance* of sentencing so that the defendant will be afforded a fair opportunity to controvert the material included." (Emphasis added). As a general matter, "it would be better if trial courts routinely made sure the pre-sentence report was available more than one day before the sentencing hearing[.] *Lang v. State*, 461 N.E.2d 1110, 1114 (Ind. 1984). However, "it is incumbent upon [the] defendant to show how [she] was prejudiced by a short time period within which to review a pre-sentence report." *Goudy v. State*, 689 N.E.2d 686, 699 (Ind. 1997).

[28] The State provided Echeverria with the PSI on May 9, 2019—one day before her sentencing hearing. It is undisputed, however, that the initial May 10, 2019, sentencing hearing was continued to May 29, 2019. So, while Echeverria received her PSI just one day before the initial sentencing hearing, the trial court effectively gave Echeverria another nineteen days within which to evaluate the PSI's contents. As such, Echeverria had more than enough time to review and dispute the contents of her PSI before the trial court conducted its

sentencing hearing.[4] We hold that Echeverria was given ample time to review her PSI, and, therefore, she is not entitled to relief regarding this issue.

[29] The judgment of the trial court is affirmed.

Najam, J., and Tavitas, J., concur.

---

[4] This Court and our Supreme Court have held that criminal defendants were given ample time to review the contents of their PSIs after having received them for a markedly shorter amount of time than that ultimately afforded to Echeverria. *Wagner v. State*, 474 N.E.2d 476, 496 (Ind. 1985) (four days); *Eubank v. State*, 456 N.E.2d 1012, 1017 (Ind. 1983) (one day); *Evans v. State*, 855 N.E.2d 378, 387 (Ind. Ct. App. 2006) (one day).